MADELEINE L. SAVOIE, petitioner,

*v.*

EDWARD I. SAVOIE, defendant.

[Decided December 16th, 1947.]

*Mr. Paul M. Strack,* for the petitioner.

*Mr. Julius P. Litwack,* for the defendant.

FRANCIS, A. M.

This matter is before me on defendant's application to vacate so much of an order dated July 29th, 1947, as required him to pay to petitioner arrears of alimony installments totaling $415. The ground for the application is that petitioner remarried on August 16th, 1947, eighteen days after the execution of the order.

A decree *nisi* was entered between these parties on March 27th, 1947. At this time the defendant was in arrears under a *pendente lite* alimony order in the sum of $115. By the decree he was directed to pay this amount to petitioner. In addition Mrs. Savoie was awarded $30 weekly as alimony.

Defendant disregarded both provisions thereof and the direction for payment of counsel fees and costs and he was cited to appear in contempt proceedings on June 23d, 1947. At

this time both parties were represented by counsel and the matter was argued. It was conceded that he owed $879.42, represented by the $115 to which reference has been made, ten weeks alimony amounting to $300, and counsel fees and costs in the sum of $464.42. No justifiable reason for his failure was given and he was adjudged in contempt. However he was granted permission to purge himself of his contumacy by paying $300 a month until the full obligation was satisfied.

On July 29th, 1947, an order was entered adjudging Savoie in contempt, specifically fixing the total sum of his arrearages at $879.42 and directing him to make payment thereof on the basis above set forth. He complied with the order to the extent of part of the counsel fees and costs, but did not pay the amount representing the accrued and fixed alimony arrearages.

Then, on learning of petitioner's remarriage, the pending application was filed.

In support of the application, defendant refers to *R. S.* 2:50–38; *N. J. S. A.* 2:50–38, which provides as follows:

"If after the decree of divorce the wife shall remarry, the Court of Chancery shall not make any order touching the alimony of such wife except that the Court of Chancery, upon application of the former husband, on notice and upon proof of the marriage of the former wife after the decree of divorce, must modify any order touching the alimony of the former wife by vacating such order or decree, or both, directing the payment of money for the support of the former wife."

The language of this enactment is very broad. It forbids the making of "any order touching the alimony of such wife" and it imposes on the court a mandatory duty to vacate and annul "any and all provisions in any such order or decree directing the payment of money for the support of the former wife." By necessary implication, cancellation of arrearages is included in the broad sweep of the statute. This is so because before arrearages can be ripened into the form necessary for execution purposes an order of the court is required. Such an order fixes the lump sum of the arrearages and upon application therefor, a writ of execution may be issued to collect that sum. If contempt proceedings are pursued, again, an order of the court is required, fixing the full sum of the

default and either committing the defendant to jail until payment is made, or directing payment in some other fashion, such as by installments. Since no order can be made after the remarriage, obviously there can be no judicial determination of a single lump sum due under the order or decree involved.

By way of *dictum* in *Hougland* v. *Hougland,* 19 *N. J. Mis. R.* 474; 21 *Atl. Rep.* (*2d*) 215, Advisory Master Herr declared that the "intent of the statute is to prevent a wife who has remarried from securing arrearages of alimony and to preclude her from seeking to hold her husband in contempt for non-payment thereof." In *Madden* v. *Madden,* 136 *N. J. Eq.* 132; 40 *Atl. Rep.* (*2d*) 611, where the question of the affect of remarriage on arrearages was directly in issue, he reiterated his earlier view, saying:

"The statute forbids the making of any order 'touching the alimony,' which, of course, includes orders for the fixing of the amount of the arrearages, orders in contempt and all other orders intended to enforce collection * * *."

On appeal there was an affirmance by the Court of Errors and Appeals, which adopted Advisory Master Herr's opinion, 136 *N. J. Eq.* 132; 40 *Atl. Rep.* (*2d*) 611.

There is one essential difference between the *Madden Case* and the one before me. In that case, while Madden was cited in contempt for alimony delinquencies which arose prior to his former wife's remarriage, he was never actually adjudged in contempt nor was any order entered fixing the amount of the arrearages. Although it was said there that the language of the statute "clearly indicates the legislative intent that remarriage puts an end to all the husband's obligations," the court intimated farther on in the opinion that it did not intend such an all conclusive statement. It was indicated that if, previous to the remarriage the sum of the arrearage had been fixed by order of the court, that sum would have taken on the attributes of a judgment. In this respect the opinion says:

"Arrearages do not become vested or take attributes of a judgment for payment of a fixed sum until Chancery so orders. No such order was made in this case."

It seems to follow, therefore, as a logical inference that if, in the *Madden Case,* an order had been entered prior to the remarriage, fixing the sum of the arrearages, those arrearages would have been transmuted into a judgment which would not be cancellable within the mandate of the statute.

In the present case the order of July 29th, 1947, determined and fixed with finality the sum due to petitioner and it adjudged defendant in contempt for failure to have paid the weekly sums which composed it. However, the form of the order which directed that he purge himself of his contempt by the payment of monthly installments of $300 raises the problem of whether or not some further order of the court is not contemplated or required in the event that the defendant failed to purge himself as directed. In other words, if the defendant failed to pay any installment, the Chancellor would have to issue a warrant for his commitment. If, as here, some of the installments had been paid, an order fixing the balance due would have to be executed and then the warrant issued committing him until that sum was paid. Does the fact that some further order may have to be made in order to accomplish the collection of the sum declared due, impose upon the court, whose decree has been flouted, the duty to cancel the offender's indebtedness? In a case such as this, I think not.

The provision in the order, adjudging Savoie in contempt, for satisfaction of the sum of $879.42 in monthly installments, had no effect upon the fixed and final character of his liability. That sum became vested with all the attributes of a judgment, *Rooney* v. *Rooney,* 102 *N. J. L.* 551; 133 *Atl. Rep.* 752; *Lynde* v. *Lynde,* 181 *U. S.* 183; 21 *S. Ct.* 555; *Second National Bank* v. *Blauvelt,* 44 *N. J. Eq.* 173; 14 *Atl. Rep.* 618; *R. S.* 2:29–57, and an abstract of the order could have been docketed in the Supreme Court as a judgment, *R. S.* 2:29–57, 58. Only the method of payment was affected.

There are several methods of enforcing payment of a sum fixed by a decree of this kind. One is by writ of execution, another is by attachment in contempt. If, for example, a writ of execution had been issued on this decree and the

defendant had agreed to satisfy it by installment payments, but the remarriage had occurred before the full amount was paid, it seems certain that the statute would not require the vacation of the writ. I cannot bring myself to the point of declaring that an order of the court in contempt proceedings for installment payments is any less efficacious than the writ of execution as a means of enforcing payment.

Beyond these considerations all the equities in the situation are with Mrs. Savoie. This defendant willfully disobeyed the order and the decree of this court. He was in default under the *pendente lite* order and under the decree *nisi*. He was at all times financially capable of discharging the obligations imposed upon him. As a matter of fact, when he should have been paying alimony, he was enjoying a Florida vacation. If such a person can mock the decree and then, because of the fortuitous circumstance (for him) of his former wife's remarriage, avoid the legitimate consequences of his contumacy, then the power and prestige of the court have come upon a serious state of decadence. It cannot be that the legislature intended any such result to flow from the statute. Under the circumstances, the petition to vacate the portion of the order of July 29th, 1947, which fixes the liability for the alimony arrearages will be denied. An order may be entered discharging the defendant from all further obligation to pay alimony subsequent to August 16th, 1947, the date of his former wife's remarriage.