54 N.J. Super. 555 (1959)
149 A.2d 814
MARY WELSER, PLAINTIFF-APPELLANT,
v.
FRANK WELSER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1959.
Decided March 23, 1959.
*558 Before Judges PRICE, SCHETTINO and GAULKIN.
Mr. Robert J. Jerome argued the cause for plaintiff-appellant (Messrs. Carl & Wm. Abruzzese, attorneys).
Mr. Morris N. Hartman argued as amicus curiae.
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal is by plaintiff-wife from an order of the Superior Court, Chancery Division, cancelling certain arrearages of support and maintenance and thus limiting her award of arrearages to $1,605, and further limiting the payment of the arrearages at the rate of $5 per week.
On April 16, 1946 a final decree of separate maintenance in favor of plaintiff was entered providing in part that defendant pay her the sum of $15 per week for her support and maintenance. Plaintiff was also allowed use of their apartment located in the premises owned by them as tenants by the entirety. Admittedly, defendant made the required payments until 1951.
On November 9, 1951 plaintiff filed a verified "complaint" stating that defendant failed to make payments since February 12, 1951. This complaint was actually a petition. Plaintiff sought an accounting of the moneys due as defendant's share of the expenses for the premises owned by them and for the apartment, an adjudication that defendant be held in contempt for failure to pay and that "plaintiff may have such further relief as may be equitable and just." Plaintiff thereafter submitted an affidavit dated January 7, 1952 and *559 on January 11, 1952 obtained an order requiring defendant to show cause in part:
"2) Why an account should not be taken of the monies due to the plaintiff from the defendant by the terms of said Final Decree for arrearages of support and maintenance at the rate of $15.00 per week as per the terms of said decree.
"3) Why an execution should not issue for the total amount thus found to be due from the defendant to this plaintiff, according to the practice of this court in such case made and provided."
The return date of the order was adjourned several times because plaintiff was ill. On September 10, 1953, the following consent order was signed: "that said order to show cause be and the same is hereby continued without date, but on 5 days' notice by either party to the other, the same may be restored to the list of motions." In May 1957 defendant was served with plaintiff's notice of motion returnable May 24, 1957 seeking to restore the application of 1951 to the list. By a consent order, dated August 14, 1957, the cause was restored.
On the first hearing date, April 10, 1958, the trial court was notified that plaintiff had been committed to Essex County Overbrook Hospital as a person of unsound mind; that her son by another marriage had notified the superintendent of the hospital that the son would ask for the appointment of a guardian ad litem to protect plaintiff in these proceedings, and that he would ask for the appointment of Ira A. Levy, Esquire, as such guardian. Mr. Levy, a counsellor at law of New Jersey, was appointed by the court.
Thereafter, at the hearing on April 15, 1958, upon the objection of defendant's attorney the trial court directed the submission of another order vacating the appointment of the guardian ad litem. No such order was ever filed. At oral argument plaintiff's attorney stated that he believed none had been submitted.
We hold that the circumstances presented to the trial court on April 10, 1958 properly required the appointment *560 of a guardian ad litem. R.R. 4:30-2; 4:38-2. As the oral order vacating his appointment was not made formal, we direct Mr. Levy to continue as guardian ad litem and to take all necessary steps to protect the interests of plaintiff. Olson v. Piazza, 92 N.J. Eq. 475, 477 (Ch. 1921); Borough of East Paterson v. Karkus, 136 N.J. Eq. 286, 289 (Ch. 1945). By this direction we intend no criticism of plaintiff's counsel. Cf. Silverstein v. Schneider, 110 N.J.L. 239, 242 (E. & A. 1933).
At the hearings defendant testified that he is an automobile mechanic taking home between $55 and $67 "If I work a full week," and that his total weekly expenses amounted to $56.50. Defendant admitted and the court found that defendant had not made payments in compliance with the provisions of the final decree since February 12, 1951 to the date of the opinion, covering a period of 379 weeks, or a total of $5,685. The trial court dismissed plaintiff's claim seeking a property accounting, found defendant in arrears as stated above, allowed plaintiff arrearages of $1,605 for only the one year preceding the notice of motion returnable May 24, 1957, and extinguished arrears in the sum of $4,080 covering the previous years' defaults. The court further denied plaintiff the right to execution and allowed defendant to pay the arrearages at the rate of $5 per week. The judgment containing these determinations stated that the action was heard "on complaint and order to show cause." The judgment was filed on June 26, 1958, and on July 10, 1958 an abstract of the judgment was recorded in the civil law docket of the Superior Court Clerk's office pursuant to N.J.S. 2A:16-18.
Appeal was taken on July 23, 1958. Defendant did not file a brief. Because the court felt that questions of grave public policy might be involved, it appointed Morris N. Hartman, Esquire, a recognized expert in the matrimonial field, as amicus curiae.
Plaintiff argues that, once the trial court determined that a certain amount of arrearages was due plaintiff and such determination was entered on the civil docket, the trial court *561 had no authority to deny execution at once of the entire judgment.
We are not here considering the enforcement or execution of an ab initio award of alimony or maintenance. Cf. Savoie v. Savoie, 26 N.J. Misc. 67, 69 (Ch. 1947). Such a situation is covered by R.R. 4:74-1 which reads, in part, "Process to enforce a judgment or order for the payment of money, other than alimony or maintenance awarded in a matrimonial action, * * * shall be a writ of execution except where the court otherwise orders * * *." The rule denies the remedy of execution to the original award of alimony or maintenance.
In 10 N.J. Practice (Herr, Marriage, Divorce and Separation), § 439, p. 441, we note: "The arrearages of an award of alimony possess the force of a judgment at law only in those cases where the court has certified the amount thereof." In Duffy v. Duffy, 19 N.J. Misc. 332 (Ch. 1941), a defaulting husband had been ordered to pay a certain weekly sum. He failed to do so during the last six years of his life and after his death plaintiff-wife sued the executors. The arrearages had never been reduced to judgment. The court properly denied the wife any relief. Judge Herr stated (at page 333):
"It is argued for complainant that the alleged arrearages under the decree became vested in her as they accrued, with the force and effect of a judgment for a fixed sum of money, and that the refusal of this court to make such orders as are requisite to enable complainant to have execution therefor amounts to an abuse of discretion. Were this the law the court would to that extent be powerless to apply equitable principles in the administration of its statutory jurisdiction over alimony and maintenance, and would be obliged to act as a mere administrative agency, impotent to prevent its processes from being employed in the furtherance of inequity and injustice. This court has always been most zealous in applying equitable principles to all phases of the marital relationship."
Cf. Lynde v. Lynde, 181 U.S. 183, 187, 21 S.Ct. 555, 45 L.Ed. 810, 814 (1901).
A different situation, however, arises in those cases in which arrearages in alimony or support payments have been *562 reduced to a sum certain and a judgment granted. The judgment may be entered upon the civil judgment docket pursuant to N.J.S. 2A:16-18, which provides in part:
"Every judgment, or order for the payment of money, entered in the superior court, chancery division, from the time of its entry upon the civil docket, and every decree or order for the payment of money, of the former court of chancery, from the time it was signed, shall have the force, operation and effect of a judgment of the superior court, law division, and execution may issue thereon as in other cases. * * *."
The following section, N.J.S. 2A:16-19, sets forth the scope of the lien resulting from the docketing of the judgment. The distinction mentioned above was clearly made and this statute applied in Joseph Harris & Sons, Inc. v. Van Loan, 23 N.J. 466, 471-472 (1957):
"R.R. 4:74-1 merely implements these statutes procedurally. At the time of its enactment and promulgation the court was faced with the situation where in the future what was formerly a decree or order of the Chancery Division would be known as a judgment or order, similar terminology being applicable to both the Law and Chancery Divisions of the Superior Court. It thus became necessary to indicate in the rule that an order or judgment for the payment of alimony or maintenance as an annuity was not such an order or judgment under the established practice in this State upon which a writ of execution could issue as a matter of course. Further, as a matter of practice a judgment for past due alimony is a final resort in most cases. Enforcement of an order for alimony and maintenance past due is usually by a proceeding in contempt, and other less drastic steps are taken before a judgment is entered upon which execution can be issued. But once a judgment or order is entered establishing a fixed sum of money due for past due payments of alimony and maintenance such judgment or order insofar as it adjudges money to be due from the defendant to the plaintiff resembles a judgment at law in the pecuniary obligations it imposes and makes them equivalent to such judgments in their effects under the statute. Close v. Close, supra [28 N.J. Eq. 472 (E. & A. 1877)]."
"They are liens against all property owned by the defendant from the moment they are placed on the civil docket and are binding as to him and his property, * * *. Like all valid judgment liens, they are collectible by execution." (Emphasis supplied.)
And in Savoie, the court said (26 N.J. Misc. at page 68):
"This is so because before arrearages can be ripened into the form necessary for execution purposes an order of the Court is *563 required. Such an order fixes the lump sum of the arrearages and upon application therefor, a Writ of Execution may be issued to collect that sum."
In Duffy we find (19 N.J. Misc. at pages 336-337):
"In this State executions to collect arrears of alimony or maintenance issue out of Chancery only, upon the special order of the Chancellor. R.S. 2:29-58; N.J.S.A. 2:29-58, provides that an abstract of a Chancery decree may become a lien on lands if filed and recorded in the Supreme Court, but it has been held that a decree for alimony payable in future installments is not such a money decree as will provide the basis of the lien. An order fixing the arrearages must be secured, and an abstract of such order filed and recorded. Rooney v. Rooney, 102 N.J. Law 551; 133 Atl. Rep. 752. Executions at law to collect alimony arrearages have never otherwise been permitted in New Jersey."
See also, generally, "Enforcement of Alimony Judgments in New Jersey," 11 Rutgers L. Rev. 726 (1957). It is clear, therefore, that a writ of execution is available to enforce a judgment in a matrimonial case determining the amount of arrearages due, once such judgment has been entered upon the civil docket.
But this does not assist the instant plaintiff because a court has the power to control its own judgments and the instant judgment contained the recital that the amount be paid in the form of $5 weekly payments. It has been held that the method of payment is not part of the judgment. See Garrison, J., concurring in Bullock v. Bullock, 52 N.J. Eq. 561, 570 (E. & A. 1894). In Paramore v. Paramore, 32 N.J. Super. 491, 495 (App. Div. 1954), Judge Francis said: "In any event, the weekly installment order does not affect the finality of the judgment; it goes only to the matter of payment or execution."
Historically, the court of equity controlled its own judgments. A court of chancery had jurisdiction to effectuate its decree by appropriate process, including the imposition of penalties, attachment for contempt, injunction and sequestration. In 19 Am. Jur., 289, § 421 we find:
"Formerly, the jurisdiction of the English court of chancery was exercised exclusively over the person of the defendant, and not in *564 rem over the subject matter of the suit. The decrees of the court did not have the dignity of a judgment at law, and the common-law process was not available for the enforcement of them. Decrees in equity were not even regarded as being matters of record. The payment of money could be enforced only by process of contempt, followed by imprisonment and sequestration of property; the writ of fieri facias or execution was not available. However, statutes and rules of court have changed the practice, and a party may now avail himself of the process of the law courts as well as that process which is peculiar to equity."
See also on the subject matter of enforcement of alimony payments, Biddle, New Jersey Divorce Practice (2d ed. 1912), pp. 152 et seq.
In 30A Am. Jur., § 910, p. 812 we read:
"Courts have inherent power to enforce their own judgments and should see to it that they are enforced when they are called upon to do so. To deprive a court of power to execute its judgments is to impair its jurisdiction, and the general rule is that every court having jurisdiction to render a particular judgment has inherent power and authority to enforce it, and to exercise equitable control over such enforcement. Thus, a court of equity has inherent power to enforce its decrees. A court of equity retains and possesses the power to control the manner of the execution of its decree, and has the inherent right to modify, by a subsequent order, the manner in which it shall be enforced. It does not follow, however, that a court will always exercise equitable control over the enforcement of its judgments; it will generally refrain from doing so when it cannot do as complete justice as could a court of equity."
As we view the effect of N.J.S. 2A:16-18, a Chancery money judgment after entry upon the civil docket has the force and effect of a judgment at law so that, absent any restriction, the judgment creditor can have execution. In addition, plaintiff's judgment becomes a lien on defendant's real estate wherever situated in New Jersey and has the qualities of a judgment at law. This statute gives an important added benefit to the judgment creditor, but such a grant cannot be used to restrict the powers the court of equity has had over the centuries. 30A Am. Jur., § 911, p. 813, "State and Legislative Control."
We hold that in matrimonial cases the power of the Chancery Division to limit the manner and method of collecting *565 arrearages is a salutary principle of equity which must be upheld and that the trial court quite properly would not permit plaintiff to "enforce a technical legal right to the unconscionable injury of a defendant." Fidelity Union Trust Co. v. Multiple Realty and Construction Co., 131 N.J. Eq. 527, 539 (Ch. 1942).
We next consider plaintiff's contention that the trial court erred in not awarding her the full amount of all arrearages instead of $1,605. She seeks the additional sum of $4,080.
As stated above, the final decree of April 16, 1946 provided for $15 per week payment by defendant to plaintiff plus plaintiff was to "have the use of the first floor apartment of the premises known and designated as #118 Claremont Avenue, Irvington, N.J., the property [owned by plaintiff and defendant as tenants by the entirety] without charge or expense to the said complainant until the further order of the court." Defendant made his payments from 1946 until sometime in 1951. His testimony discloses that he then stopped making further payments because in 1951 he suffered an alleged heart attack and was then incapacitated for 3 1/2 months. Late in 1952 he had back trouble which incapacitated him for 5 1/2 months. And in 1953 defendant had an operation for a hernia which incapacitated him. Moreover, he testified that he made no payment from 1953 on because plaintiff had tenants in part of her own apartment, an upstairs apartment, and the basement. Defendant is an automobile mechanic with a take-home pay between $55 and $67, "If I work a full week," and his gross income for the year 1957 was $4,100. His board costs him $40 a week. He gives his mother $10 a week for her support. He has about $1.50 to $2 a week expense to see his brother in Overbrook. His medical expenses amount to about $5 a week. He has no other income except from his work; he has no bank account. In 1957 he bought a 1952 DeSoto for $600 getting a $50 allowance for a 1938 Packard which he traded in.
In Federbush v. Federbush, 5 N.J. Super. 107, 110 (App. Div. 1949), this court pointed out that past-due *566 installments of support and alimony are subject to the control of the court, citing Duffy case, supra, and Madden v. Madden, 136 N.J. Eq. 132 (E. & A. 1945). In the latter case Advisory Master Herr was affirmed on his opinion. He granted the husband's "application to annul the alimony order ab initio, so as to eliminate all arrearages accrued thereunder." (at page 136).
The trial court's determinations: (a) limiting arrearages to $1,605 against defendant who was earning $55 to $67 take-home pay; (b) holding that defendant's "financial situation shows a present inability" to pay the $1,605 in lump sum and therefore limiting defendant's payments to $5 per week on arrearages, and finally, (c) affirming the award of $15 per week support plus the $5 on arrearages totalling $20 per week for plaintiff, all seem sustainable by the record. We hold that the trial court fairly exercised its discretion.
We lastly consider a point raised by the amicus curiae, namely, is the judgment sustainable on the issues raised by the pleadings?
As stated above, plaintiff filed a verified "complaint" to compel defendant to account for his share of the expenses incurred and expended on their jointly owned premises, as well as the apartment, an adjudication that defendant be held in contempt for failure to make weekly support payments and "that the plaintiff may have such further relief as may be equitable and just." The order to show cause stemming from the petition sought, first, the property accounting, second, an account of the arrearages and additionally sought an execution for the total amount thus found to be due and owing. No reference to a contempt was stated.
Extensive testimony on the accounting issue was taken, no determination of record was made and no appeal has been taken on this phase of the litigation. The contempt application was abandoned. Testimony was taken on the issue of arrearages and defendant's defenses thereto.
R.R. 4:15-2 provides, in part:
*567 "When issues not raised by the pleadings * * * are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings * * *. Such amendment of the pleadings * * * as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend shall not affect the result of the trial of these issues."
See also Colozzi v. Bevko, Inc., 17 N.J. 194, 203 (1955); Schnitzer & Wildstein, N.J. Rules Serv. AIV-386.
We direct that the guardian ad litem make the proper motion before the trial court in order to conform the allegations and prayers for relief in the petition to the proofs adduced and to the issues encompassed by the judgment.
Remanded for action not inconsistent with this opinion.