UNITED STATES of America,
Plaintiff,

v.

969.46 ACRES OF LAND, MORE OR LESS, Situated IN CHATHAM COUNTY, STATE OF NORTH CAROLINA, and Jennings V. Womble, et al., Defendants.

Civ. No. C-241-D-72.

United States District Court,
M. D. North Carolina,
Durham Division.

Dec. 11, 1974.

N. Carlton Tilley, Jr., U. S. Atty., and Ronald V. Shearin, Asst. U. S. Atty., Greensboro, N. C., for plaintiff.

William T. Hatch, Hatch, Little, Bunn, Jones & Liggett, Raleigh, N. C., for defendants.

## MEMORANDUM OPINION

WARD, District Judge.

This matter came on for hearing on April 5, 1973, on motion by the plaintiff for summary judgment under Rule 56, Federal Rules of Civil Procedure. Jurisdiction of the Court is based on eminent domain, 28 U.S.C. § 1358. Both parties were present at the evidentiary hearing and were represented by counsel. The parties have filed affidavits, exhibits, and briefs in support of their respective positions, and the Court, after careful consideration, finds no material facts are in dispute and that the plaintiff is entitled to summary judgment as a matter of law.

After this action was instituted and an evidentiary hearing was completed, the parties informed the Court that a settlement of the matter seemed likely although the details of a settlement would take some time to complete. The Court indicated it would be willing to postpone deciding the case inasmuch as settlement appeared imminent. The parties then entered protracted settlement negotiations, and the Court finally received a letter from defendants' counsel on November 8, 1974, stating all settlement negotiations were at an impasse and a decision by the Court on the motion for summary judgment would be required. Counsel for both parties advised the Court on November 21, 1974, that no further conference or hearing would be sought by either party and that the record before the Court was complete.

Since this is a case in which equities reside with each party, the Court deemed it appropriate to allow the parties time to explore every possible solution which could result in a just settlement of the dispute. It now being evident that further negotiations would be futile, the Court renders summary judgment based on the following findings of fact and conclusions of law.

This case is a suit by the United States of America against the owners of real estate, Mable Wilson Herndon, Joyce Herndon Veale, and E. M. Veale, for judgment fixing just compensation for the condemnation of land in the amount set forth in an option agreement signed by the United States of America, Mable Wilson Herndon, and her husband. The agreement stated that the plaintiff would pay $287,500.00 for two

tracts of land when the vendor's offer had been accepted and title approved or when the plaintiff acquired the land by condemnation. The land was subsequently taken by condemnation, and the government claims that the option price binds the vendor under the terms of the option agreement. The defendants claim the delay of approximately twenty months between the time the government accepted the offer and the time it filed a Declaration of Taking constituted an unreasonable delay by the United States in executing the option agreement. Therefore, the defendants seek to have the issue of just compensation determined by the Court as the fair market value of the property at the time of taking, without regard to the amount agreed upon in the option, which the defendants allege is invalid.

. The material facts are not in dispute and are well documented in the exhibits and affidavits before the Court. Mable Wilson Herndon inherited the land in question from her father. In November of 1963 she had the property surveyed by Mr. C. W. Russum, a Registered Land Surveyor. Mr. Russum produced a survey map which he gave to Mrs. Herndon. She believed the map correctly delineated the boundary lines of her property.

By 1968 the Army Corps of Engineers was engaged in the survey and acquisition of land to build the New Hope Dam. An appraiser with the Corps, Mr. Causey, visited with Mrs. Herndon and her son, James Herndon, at the Herndons' home in 1968. He informed them of the project and told them that part of her land would be required by the government. He also stated that the Corps had made a survey of the land which would be required by the project and that the portion owned by her had been divided into two tracts and assigned the tract numbers 436 and 517. When the Herndons reviewed the Corps' survey of Tract 517, they informed Mr. Causey

that there was an error in the survey which gave them between six and seven acres of land that Mrs. Herndon did not own, but which they believed was owned by Mr. J. V. Womble. Mr. Causey told Mrs. Herndon not to worry about the discrepancy, that the problem would be resolved, although she might be entitled to less money than the Corps had originally thought.

The Army Corps of Engineers was aware of the discrepancy in the boundary lines between the Herndon and Womble property appearing on the Corps' survey and on the maps of the parties. Mr. Futrell, Project Real Estate Officer for the Corps, asked the Wombles and Herndons to meet and agree upon the proper line in the summer of 1968. Acting on information that the parties had agreed upon a line, Mr. Futrell prepared an agreement as to the location of the boundary line and obtained Mr. Womble's signature on the agreement. On August 15, 1968, the agreement was taken to Mrs. Herndon for her signature. She agreed to the boundary verbally but refused to sign the agreement. Consequently, the Corps did not pursue the matter further and proceeded to draw up options for the tracts based on the Corps' survey. The Corps' survey was incorrect and did include approximately seven acres in Tract 517 owned by Mrs. Herndon, when in fact the seven acres belonged to Tract 518 owned by Mr. J. V. Womble.

Mr. Womble entered into an option agreement with the Corps for the sale of certain land which he owned, including Tract 518 as described by the Corps' survey, on May 16, 1970. On October 8, 1970, Mr. Futrell obtained the signature of Mrs. Herndon and her husband on a formal written offer agreeing to sell to the United States of America land contained in Tracts 436 and 517 (the latter tract containing approximately seven acres not owned by the Herndons at that time).[1] The agreement fixed just com-

---

1. The attorneys for both parties revealed to the Court that the approximately seven acres have subsequently been conveyed by the Wombles to the Herndons by quitclaim deed, as of April 2, 1974. Disbursement of the full amount of the purchase price speci-

pensation for both tracts at $287,500.00. This offer of the Herndons was accepted for the government by Mr. W. K. Mims on December 18, 1970.

On December 18, 1970, Mr. Futrell placed a check order with Finance and Accounting Branch of the Army Corps of Engineers in Savannah, Georgia, for a check so that the option could be closed. Mr. Futrell received the check on January 8, 1971, and he forwarded it to the plaintiff's closing attorneys. By letter dated February 9, 1971, the closing attorneys indicated that they did have the check in hand but had doubts as to the viability of closing based on the description of Tract 517 contained in the option and based on the Corps' survey.

Based on the doubts raised by the closing attorneys Mr. Futrell contacted Mrs. Herndon and her son James by telephone and informed them of the problem. Mr. Futrell said the seven acres might have to be condemned, and Mrs. Herndon indicated that she desired every effort be made for the title to be cleared rather than having the land condemned. In an effort to comply with her wishes, Mr. Futrell forwarded by letter dated February 10, 1971, a quitclaim deed for the seven acres to the Herndons with instructions for them to attempt to obtain the signatures of J. V. Womble, G. F. Womble, and their wives on the deed.

Mr. James Herndon met with Mr. J. V. Womble shortly thereafter in an effort to secure his signature on the quitclaim deed. Mr. Womble refused to sign the deed stating that if the government owed him more money for his property, he wanted payment. Further discussions occurred between Mr. Futrell and the Herndons about the property during the summer and fall of 1971 and Mrs. Mable Herndon reiterated her desire to avoid condemnation in any event. Fur-

ther efforts were made by the Herndons to secure a quitclaim deed for the property from the Wombles, but to no avail. Mr. Gordon Cronin, a government negotiator, contacted Mr. James Herndon on February 7, 1972, and offered his help in resolving the matter but the parties did not resolve the problem.

By the spring of 1972 the government assumed the position that the land would have to be condemned, despite the protestations of Mrs. Herndon to avoid that action. Accordingly, on June 14, 1972, the Declaration of Taking was prepared by the Corps of Engineers and filed in the clerk's office of this Court on August 16, 1972.

At no time prior to the filing of the Declaration of Taking did Mrs. Herndon give notice of rescission of the option due to unreasonable passage of time nor did she demand immediate payment at any time during the period. In fact, the government held back on condemning the property in response to Mrs. Herndon's request that another solution be made of the problem. The Herndons and the government worked closely and amiably in an effort to solve the problem by some means other than condemnation proceedings.

Under these facts the government moves for entry of summary judgment fixing just compensation for the taking of these tracts in the amounts set forth in the option agreement. The defendants seek denial of the motion and request that the issue of just compensation be determined by the Court as of the date of taking. The defendants set forth two grounds in support of their position. First, the title to Tract 436 specified in the option was good and marketable on December 18, 1970, when the plaintiff accepted the defendants' offer and, therefore, the government should have closed as to that tract without delay, and in any event, by February

fied in the option agreement has now been made to Mrs. Mable Wilson Herndon and Mr. and Mrs. E. M. Veale by Orders of this Court entered November 27, 1972, and May 3, 1974. Consequently, the Herndons have

now been paid for all lands they contracted to convey, including the approximately seven acres in dispute, and the government now has title to all of the lands it contracted to purchase.

10, 1971. Second, the defendants contend a lapse of time of almost twenty months from the time the option agreement was executed until the land was condemned was unreasonable and invalidates the option leaving the issue of just compensation to be resolved as of the date of taking.

■ As to the contention that the government should have accepted the title to Tract 436 and closed as to that tract as soon as possible, it is well-settled law that except insofar as performance is waived or excused, the vendor must convey *as provided* by the terms of the option agreement. 92 C.J.S. Vendor and Purchaser § 229; Crotts v. Thomas, 226 N.C. 385, 38 S.E.2d 158 (1946). A careful examination of the option contract discloses both tracts were optioned under one agreement with no provision for divisibility of the tracts for individual purchase. A unit price of $287,500.-00 was payable on acceptance of the offer by the plaintiff and on the approval of the vendor's title conveying the property by a good and sufficient general warranty deed. No apportionment of this price was made between tracts. As was stated before in a companion case to the one presently before the Court, in short, the two tracts were a package deal, offered by the defendants and accepted by the government, and the government need not accept less than that for which it bargained. United States of America v. 462.42 Acres of Land, etc., C–135–D–72 (M.D.N.C. April 24, 1974).

■ The government had a right to insist that the terms of the option be fulfilled exactly. As a matter of fact, the government optionee is required to exercise the option in the manner provided in the contract and, unless such requirements are waived, its failure to do so, or its attempt to exercise it in any other manner, is inoperative to form a binding contract for sale. Reynolds v. Maples, 214 F.2d 395 (5th Cir. 1954). The government, having secured a valid option agreement which fixed the terms of compensation regardless of whether the sale was consummated by the vendors' production of good and marketable title (pursuant to Clause Five of the option agreement) or by condemnation proceedings (pursuant to Clause Six of the option agreement), had a very real interest in holding the defendants to their bargain in order that the option remain valid and binding to fix compensation. United States of America v. 462.42 Acres of Land, etc., *supra.*

In turning to the defendants' second contention that an unreasonable delay occurred between the option date and the date of taking, thus voiding the option agreement, it is noted that there are competing equitable considerations existing under this particular set of facts which have made this question most difficult to decide. The most perplexing consideration and the one which has caused the Court serious reflection in the disposition of this case centers around the undisputed fact that Mrs. Herndon told the government agents as early as 1968 that she did not own the seven acres which the government survey indicated she owned in Tract 517. There is undisputed evidence that government agents told her not to concern herself about the discrepancy because it would be cleared up at a later date. Furthermore, Mrs. Herndon seemed to place a good deal of reliance on the statements of the plaintiff's agents throughout much of these transactions. She did not have advice of legal counsel. She remained most cooperative and patient throughout the events occurring in this case.

However, equities exist favoring the plaintiff's conduct in this case as well. It attempted to resolve the boundary dispute in 1968 by drawing an agreement which would have fixed the line between the Herndon and Womble property. The government procured the Wombles' signatures but could not get Mrs. Herndon to sign. Such an agreement would have in all likelihood prevented this dispute. (Mrs. Herndon later explained that she would not sign the agreement in 1968 because she did not understand its terms

and meaning.) The Corps further tried to accommodate her by honoring her request to avoid condemnation until it became the last resort. It sent special negotiators to help Mr. James Herndon in his effort to obtain quitclaim deeds to clear the title to Tract 517. And finally, they did not force or in any way defraud Mrs. Herndon into signing the option agreement for sale of the two tracts of land on December 18, 1970. She was aware that the seven acres were included in the description of the property in the option which she freely and voluntarily signed.

Having ventured into the labyrinth of facts in this case relating to acts of the parties which might give rise to equitable relief, it is the opinion of the Court that the equities favoring each side are very nearly balanced. Furthermore, there are controlling principles of law which dictate the outcome of this case apart from equitable considerations.

The defendants argue that twenty months passed between the acceptance of the option and the filing of the Declaration of Taking. This delay is claimed to be unreasonable and provides the basis for the defendants' argument that the option agreement is no longer valid and binding.

The option agreement provides no time limit within which the option must be exercised. In such a case the law provides that the parties must act within a reasonable time. United States v. Stott, 140 F.2d 941 (8th Cir. 1944). However, where the vendee in an executory contract to purchase land is entitled to a reasonable time for completion of the transaction and steps toward completion thereof have been taken, the vendor cannot terminate the contract without notice to the vendee of such intention, after which the vendee has a reasonable time to perform his contractual obligations. United States v. Stott, supra; United States v. 2,974.49 Acres of Land, Etc., 308 F.2d 641 (4th Cir. 1962). In determining what constitutes a reasonable time for the vendee to act after the vendor's notice of rescission of a contract which specified no time for performance, consideration should be given to the nature of the subject matter, the object of the contract situation, and the conduct of the parties, and all other circumstances should be considered including those circumstances which occurred prior to the time notice of rescission was received. United States v. 2,974.49 Acres of Land, Etc., supra.

In the present case, the defendants never gave notice of rescission to the plaintiff. They did not make demand on the plaintiff for payment of funds. The plaintiff and the defendants worked very closely to achieve a solution to the problem. In fact, Mrs. Herndon requested a delay in the hope that she could provide clear title and thus avoid condemnation proceedings to which she attached negative and undesirable connotations. In this case the delay was no more attributable to the Army Corps of Engineers than to Mrs. Herndon. The Herndons' counsel, while candidly admitting that the relevant case law requires notice of rescission, contends notice should not be required in this case because Mrs. Herndon was not represented by legal counsel until after the Declaration of Taking had been filed. Defendants' counsel urges that the government, with all its legal consulting resources, had an unfair advantage over Mrs. Herndon who was unschooled in the complexities of law of vendor and purchaser and eminent domain.

Although the Court is not totally insensitive to this argument, such a rule cannot be adopted. If such a rule were to prevail, no one could ever be sure of the validity of a contract negotiated with another party if such other party were not represented by counsel throughout the negotiations. The legal concept that requires notice of rescission before a contract for the sale of land can be terminated is based on the principle that one must make a demand of his rights under the contract before the law will allow him to dishonor his obligation. Such a rule is necessary to avoid one

party's total breach of a contract based on a nonmaterial breach by the other party. Such rule also prevents one party from acquiescing in delay and then claiming the contract is void as a result of delayed performance. In the present case, Mrs. Herndon neither expressly nor impliedly gave the government notice of rescission and, indeed, requested delay from time to time. It, therefore, seems that practical logic, applicable legal principles, and balanced equitable considerations coalesce under the facts of this case to entitle the plaintiff to summary judgment.

 In the Fourth Circuit, the question of reasonableness of delay by the United States in fulfilling its obligations under an option contract which specifies no time for performance is a jury question. United States v. 2,974.49 Acres of Land, Etc., *supra*. Although it is true that twenty months passed between the acceptance of the option by the plaintiff and the filing of the Declaration of Taking, it must be concluded such delay was not unreasonable, as a matter of law, in view of the fact that the vendor never gave notice of rescission nor made demand for payment. It is well-settled law that a private party and the United States Government may determine compensation for real property prior to the filing of the Declaration of Taking and such procedure does not offend the constitutional stricture that private property shall not be taken for public use without just compensation. "The Fifth Amendment does not prohibit landowners and the Government from agreeing between themselves as to what is just compensation for property taken." Albrecht v. United States, 329 U.S. 599, 603, 67 S.Ct. 606, 608, 91 L.Ed. 532, 538 (1946).

Accordingly, the motion for summary judgment of the plaintiff, United States of America, is granted, thereby fixing just compensation for the taking of Tracts 436 and 517 in the amount of Two Hundred Eighty-Seven Thousand and Five Hundred Dollars ($287,500.00).