JULIA T. DUFFY, complainant,

*v.*

FRANCIS P. DUFFY, defendant.

[Decided April 9th, 1941.]

*Messrs. Gilhooly & Yauch (Mr. Edward Gilhooly)*, for the complainant.

*Mr. Philip A. Donnelly*, for the executors of the last will and testament of Francis P. Duffy, deceased, impleaded as defendants.

HERR, A. M.

The complainant, Julia T. Duffy, secured a final decree for separate maintenance in this cause on March 20th, 1923, by the terms of which the defendant, Francis P. Duffy, was ordered to pay her the annual sum of $520 in equal weekly installments of $10 each as a suitable allowance for the support and maintenance of the complainant and of a daughter of the marriage, who was then of the age of ten years. The

decree contained the express reservation: "And it is further ordered, adjudged and decreed that either party be at liberty to apply, upon a future change of circumstances of the parties, for a variance or modification of this decree, touching said alimony, maintenance and custody, as shall be equitable and just."

The defendant husband made the weekly installment payments as directed until February 18th, 1933, but it is alleged that he paid none thereafter. He died on May 7th, 1939, leaving a last will and testament which was duly proved on May 18th, 1939. Peter J. Duffy and Philip F. Donnelly qualified as executors. On May 11th, 1940, an order was entered, upon notice to the executors, reviving the action and naming them defendants in their capacity as executors. A petition was thereupon filed by the complainant praying that the court fix the amount of arrearages claimed to be due her under the decree of March 20th, 1923, amounting to $3,240, calculated at the rate of $10 a week from February 18th, 1933, to May 7th, 1939, the date of the defendant's death.

The defendant-executors have countered with an application for an order discharging the order of revivor and dismissing the complainant's petition for fixing of arrearages of alimony.

It is argued for complainant that the alleged arrearages under the decree became vested in her as they accrued, with the force and effect of a judgment for a fixed sum of money, and that the refusal of this court to make such orders as are requisite to enable complainant to have execution therefor amounts to an abuse of discretion. Were this the law the court would to that extent be powerless to apply equitable principles in the administration of its statutory jurisdiction over alimony and maintenance, and would be obliged to act as a mere administrative agency, impotent to prevent its processes from being employed in the furtherance of inequity and injustice. This court has always been most zealous in applying equitable principles to all phases of the marital relationship. The legislature committed these matters to the jurisdiction of the Court of Chancery to the end that equitable principles should be applied. *Westcott* v. *Hinckley, 56*

*N. J. L. 343; 29 Atl. Rep. 154.* The statutory language is (*R. S. 2:50-37; N. J. S. A. 2:50-37*), "The court of chancery may make such order touching the alimony of the wife, and also touching the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just * * *; orders so made may be revised and altered by the court from time to time as circumstances may require," and (*R. S. 2:50-39; N. J. S. A. 2:50-39*), "The court of chancery may decree and order suitable support and maintenance to be paid and provided by the husband for the wife and her children, or any of them, by their marriage, or to be made out of his property and for such time as the nature of the case and circumstances of the parties render suitable and proper in the opinion of the court. The court may compel the defendant to give reasonable security for such maintenance and allowance and may, from time to time, make further orders touching the same as shall be just and equitable and enforce such decree and orders in the same manner mentioned in section 2:50-37 of this title."

The two sections are cognate. The one applies in suits for divorce; the other in suits for separate maintenance. It is not perceived that the legislature intended any other distinction to be made between them, and our courts have made no other distinction in administering them.

It would be difficult to conceive language more apt to express the legislative intent that the court shall in all such cases do equity. And as to the remedy the provision is that process may issue to enforce payment in such manner "as to the said court shall from time to time seem reasonable and just," and that the performance of such decrees may be enforced "according to the course and practice of the court of chancery." Process of execution to enforce alimony and maintenance decrees does not issue as of course, but only upon the special order of the Chancellor. It will not be ordered unless equitably justified.

As authority for the argument that arrearages of alimony or maintenance under a final decree are vested to the extent that the court cannot deal with them retroactively, complain-

ant cites *Bolton* v. *Bolton, 86 N. J. Law 622; 92 Atl. Rep. 389.* That case, however, turned upon the construction of the New York statute under the full faith and credit clause, and is not at all in point here.

The Supreme Court of the United States has had occasion to review the question of the application of the full faith and credit clause to cases involving alimony in a number of cases, notably *Barber* v. *Barber, 21 How. 582; 16 L. Ed. 226; Lynde* v. *Lynde, 181 U. S. 183; 45 L. Ed. 810,* and *Sistare* v. *Sistare, 218 U. S. 1; 54 L. Ed. 905.*

The *Lynde Case* involved the construction of our own statute. Mrs. Lynde secured a decree in this court for a lump sum of $7,840, for alimony accrued from the date of the filing of her petition to the date of the decree, together with a counsel fee of $1,000 and costs of $136.07. The decree also provided that the defendant pay her thereafter the sum of $80 per week as permanent alimony. She then brought suit on the decree in the Supreme Court of the State of New York and recovered a judgment not only for the lump sum, counsel fee and costs awarded to her by our decree, but for the arrearages of weekly alimony accrued from the date of the decree to the date of the institution of the New York action. The Appellate Division of the Supreme Court modified the judgment by reducing the amount of the recovery to $8,840, with interest and costs, eliminating the amount of the arrearages accrued under the prospective portion of the decree, and as thus modified the judgment was affirmed by the New York Court of Appeals, and again affirmed by the United States Supreme Court. For a history of the litigation, see *Lynde* v. *Lynde, 64 N. J. Eq. 736; 52 Atl. Rep. 694.*

In the opinion of the United States Supreme Court in the *Lynde Case* (*181 U. S. 183, 187; 45 L. Ed. 810, 814;* by Mr. Justice Gray), it was said:

"The decree for the payment of $8,840 was for a fixed sum already due, and the judgment of the court below was properly restricted to that. The provision for the payment of alimony in the future was subject to the discretion of the Court of Chancery of New Jersey which might at any time alter it, and was not a judgment final for a fixed sum."

In the *Sistare Case* Chief-Justice White reviewed and distinguished the decisions in the *Barber* and *Lynde Cases,* reaffirming the holding of the *Lynde Case* that under the New Jersey statute a decree for alimony payable in future (as distinguished from a decree for a lump sum for alimony already accrued) may be modified at any time by the court with retroactive effect, and hence is not a final decree for the payment of definite and fixed amounts of money. In the opinion he says:

"The reasoning expressed in that case [Lynde] was based solely and exclusively on the ground that portions of the decree for alimony which were held to be not within the purview of the full faith and credit clause were not so embraced, because their enforcement 'was subject to the discretion of the Court of Chancery of New Jersey, which might at any time alter it * * *.' In other words, the ruling was expressly based upon the latitude of discretion which the courts of New Jersey were assumed to possess over a decree for payment of future alimony. * * * We think the conclusion is inevitable that the *Lynde Case* cannot be held to have overruled the *Barber Case,* and therefore, that the two cases must be interpreted in harmony, one with the other."

The New York statute considered by the Supreme Court in the *Sistare Case* was not as broad in its terms, when read in its entirety, as is the New Jersey act, in that under the New York statute a defendant could not make application to have the decree for alimony varied or modified "unless leave to make the same shall have been previously granted by the court by order * * *." Moreover, as is pointed out in the *Sistare* opinion (on page 912 of the *L. Ed.*):

"It was not unusual in New York to resort to executions as upon judgments at law to enforce collection of unpaid alimony installments" (and at page 913),

"* * * In view of the further fact that decrees for alimony in New York, where authority to modify was not expressly conferred by statute, or *was not reserved in the decree at the time of rendition* * * *."

In this state executions to collect arrears of alimony or maintenance issue out of Chancery only, upon the special

order of the Chancellor. *R. S. 2:29-58; N. J. S. A. 2:29-58,* provides that an abstract of a Chancery decree may become a lien on lands if filed and recorded in the Supreme Court, but it has been held that a decree for alimony payable in future installments is not such a money decree as will provide the basis of the lien. An order fixing the arrearages must be secured, and an abstract of such order filed and recorded. *Rooney* v. *Rooney, 102 N. J. Law 551; 133 Atl. Rep. 752.* Executions at law to collect alimony arrearages have never otherwise been permitted in New Jersey. In this respect our practice is essentially at variance with that in New York in the importance respect pointed out by Chief-Justice White in the *Sistare Case,* and as above stated the decree in the case at bar contains an express reservation, which in the opinion of the Chief-Justice is also a differentiating circumstance. In harmonizing the rulings in the *Barber* and *Lynde Cases,* Chief-Justice White said:

"First, * * * generally speaking where a decree is rendered for alimony and is made payable in future installments, the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the *Barber Case,* 'alimony decreed to a wife in a divorce or separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is.' Second, that this general rule, however, does not obtain where, by the law of the state in which a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due."

The decision of the United States Supreme Court in the *Lynde Case* is direct authority to the effect that under our statute as it was in the year 1900 (and it has not since been changed on that point) this court has authority to modify or

vacate its alimony and maintenance decrees as to overdue and unpaid installments. The *Sistare Case* was decided by the United States Supreme Court in the year 1910. Three years later that court again cited the *Lynde Case* with approval in deciding *Thompson* v. *Thompson,* reported in *226 U. S. 559; 57 L. Ed. 347.* It is interesting to note that the opinion in the *Thompson Case* was handed down by Mr. Justice Pitney and that he referred therein to the New Jersey case of *Lynde* v. *Lynde, 64 N. J. Eq. 736, 751; 52 Atl. Rep. 694,* the opinion in which he had written for our Court of Errors and Appeals when that court had a phase of the *Lynde* litigation before it in the year 1902 and in which he mentions the Supreme Court decision handed down in April, 1901. Mr. Justice Pitney, before his elevation to the United States Supreme Court had been successively a Supreme Court Justice and Chancellor of New Jersey. He was fully conversant with the New Jersey law on the subject and aware of all of the implications of the opinion of Mr. Justice Gray in the *Lynde Case.* The approval of that decision by him in his opinion in the *Thompson Case* is therefore of the greater significance.

In accord also with this view is the early decision of our Supreme Court in *Van Buskirk* v. *Mulock, 18 N. J. Law 184,* in which Chief-Justice Hornblower said:

"It is not always easy to say when a decree is final; and when it is so, it is not final in the sense of a judgment at law. It is, at least, in a qualified sense, always open. It may be re-examined on a bill of review; it may be opened for a re-hearing; it may, in some cases, be mitigated, or modified or relieved against, upon petition. * * * On which of such decrees, or on what branches of them, are actions at law to be brought? If we begin, where shall we end? Besides, after final decrees, equities may arise by the change or death of the parties, or by acts of parties, that may affect the rights, lessen or increase their equitable liabilities, or altogether discharge them. Upon a *ca. sa.* or *fi. fa.,* or upon a sequestration or attachment, out of Chancery, upon its decree, a party may approach that court which is always open, by petition, or on motion, and have the benefit of some equity that has arisen since the decree. But if an action at law is brought on the

decree, how can such relief be given? Suppose a decree for alimony, and afterwards the wife should return to the husband and be reconciled; or should so badly conduct herself, as to entitle the husband, in equity, to be relieved from the decree? Or, a change in his circumstances, from competency or wealth, to embarrassment and poverty, under providential dispensations, that would induce the Chancellor to lessen the amount of alimony? * * *."

While expressions to the contrary may be found in cases decided in this court, they are mostly by way of *dicta,* and there is lacking any well-considered decision. The question has not yet been dealt with by the Court of Errors and Appeals. This court is therefore free to adopt the construction given to the statute in the *Lynde Case.* Not only is that construction more in harmony with the evident legislative purpose, the nature of the subject-matter and the approved methods of administering relief according to equitable principles, but (in the absence of a controlling decision to the contrary) this court ought to regard the decisions of the United States Supreme Court as of high authority. The cases decided in that court, both before and after the *Sistare* decision, have been in accord with the ruling in the *Lynde Case. Audubon* v. *Shufeldt, 181 U. S. 578; 45 L. Ed. 1009; Wetmore* v. *Marcoe, 196 U. S. 73; 49 L. Ed. 390; Thompson* v. *Thompson, supra; Yarborough* v. *Yarborough, 290 U. S. 226; 78 L. Ed. 269 (1933).* See, also, *Hanson* v. *Loomis, 18 Fed. Rep. (2d) 528.*

And that ruling has remained unchanged for almost forty years in the federal courts, which fact in itself, as Chief-Justice White observed in the *Sistare Case* (commenting upon the long period of time which had intervened between the decisions of that court in the *Barber* and *Lynde Cases*) "adds authoritative force to the ruling."

For the above reasons it is determined that complainant has no vested right to recover the arrearages under her order out of the estate of her deceased husband. It is within the sound discretion of this court to allow or to disallow her claim, upon general equitable principles.

In my judgment, under the circumstances of this case,

complainant's application should be denied. The proofs on complainant's part are to the effect that no alimony was in fact paid by the defendant after February 18th, 1933, although the original order was never modified, but the complainant took no steps whatsoever to enforce the decree against her husband in his lifetime, although he remained at all times within the jurisdiction of this court and although no obstacle stood in the way of her taking proceedings against him at any time for the enforcement of the order. Complainant gives as her reason for not having proceeded upon the order that she was under the impression that her husband's financial means were inadequate and learned that his health was not good. It appears that the daughter of the parties became self-supporting in or about the year 1930 and reached the age of twenty-one years in the year 1934. It further appears that the defendant, Francis P. Duffy, in his lifetime and after he is alleged to have ceased to make payments under the order expended sums of money aggregating $1,154.49 for repairs to real property owned by complainant. By his last will and testament he favored a brother and a sister-in-law, with whom he had lived after his separation from complainant and who took care of him during his illnesses, bequeathing legacies of $50 each to his widow and daughter and devising to his widow a life estate in certain real property which she claims is now worthless. He died seized of real estate and possessed of some $4,600 in bank deposits.

Under these circumstances complainant, in my judgment, is estopped to press for payment of alleged arrearages under the order. That the court may infer from the circumstances surrounding a given case that the parties have made some arrangement between themselves with respect to support, or that complainant has acquiesced in defendant's default or has waived her strict rights under an alimony or maintenance decree, where she has failed for a long period of time to resort to the court, has long been settled law. The ecclesiastical courts would not ordinarily enforce arrearages of alimony beyond one year, a rule which has met with approval in our own decisions. *DeBlaquiere* v. *DeBlaquiere, 3 Hagg. Eccl. 322; 162 Eng. Reprint 1173; Lynde* v. *Lynde, 64 N. J. Eq.*

*736, 753; 52 Atl. Rep. 694; Warren* v. *Warren, 92 N. J. Eq. 334, 337; 112 Atl. Rep. 729; Freund* v. *Freund, 71 N. J. Eq. 524, 529; 63 Atl. Rep. 756; affirmed, 72 N. J. Eq. 943; 73 Atl. Rep. 1117; Reik* v. *Reik, 101 N. J. Eq. 523; 139 Atl. Rep. 385; affirmed, 103 N. J. Eq. 23; 141 Atl. Rep. 921; Wilson* v. *Wilson, 14 N. J. Mis. R. 33; 181 Atl. Rep. 257; Herman* v. *Herman, 17 N. J. Mis. R. 127; 5 Atl. Rep. (2d) 768.*

Particularly should an estoppel be applied in this case because of the defendant's death.

"Where one is aware of his rights and fails to assert them promptly after knowledge of their invasion, and the person against whom the rights could have been asserted might have a valid defense thereto but is dead, and the evidence of such defense may have been lost by great lapse of time and it is thus rendered difficult to decide the justice of the rights so tardily asserted, the long delay not explained satisfactorily, amounts to such laches as will bar the relief sought." *Phair* v. *Melosh, 125 N. J. Eq. 497, 502; 6 Atl. Rep. (2d) 491; affirmed, 127 N. J. Eq. 15; 11 Atl. Rep. (2d) 32,* and cases cited therein.

An order will therefore be advised dismissing the petition to fix arrearages of maintenance, and vacating the order reviving the suit.