ANNABELLE S. KHALAF, PLAINTIFF-APPELLANT, v. JAMES W. KHALAF, DEFENDANT-RESPONDENT.

Argued January 12, 1971—Decided March 22, 1971.

64

*Mr. Leslie S. Kohn* argued the cause for plaintiff-appellant (*Messrs. Kohn, Kirsch & Needle,* attorneys).

*Mr. Herman E. Dultz* argued the cause for defendant-respondent (*Mr. Lawrence Friedman* on the brief).

The opinion of the court was delivered by

PROCTOR, J.  The plaintiff, Annabelle Khalaf, brought an action for separate maintenance and child support in the Chancery Division. At the trial, the defendant James Khalaf conceded that he abandoned his wife. Accordingly, the only issue was the amount of separate maintenance and child support which the defendant should be required to pay. After hearing testimony, the Chancery Division ordered the defendant to pay $65 per week to the plaintiff for her support and $25 per week for the support of James, one of two sons of the marriage. The other son, Gregory, was living with his father. The court also ordered the defendant to pay the real estate taxes and insurance on the family residence in Maplewood and on the summer home in Normandy Beach. Plaintiff appealed contending that the amount of support was insufficient. The Appellate Division in an unreported opinion affirmed the judgment of the trial court. On plaintiff's motion, we granted certification. 57 *N. J.* 137 (1970).

The Khalafs were married in 1941. When the defendant left plaintiff in October of 1967, their son James, who elected to remain with his mother, was 18 years old and was a freshman at George Washington University. The younger son, Gregory, who was still in high school, chose to live with his father. Prior to the separation, the parties lived in an eleven room house in Maplewood, part of which was allocated to Dr. Khalaf's dental offices. They also own a small summer home in Normandy Beach. Both homes are owned by the parties as tenants by the entirety and are free and clear of mortgages. They also had two automobiles and for a time belonged to a local country club. Plaintiff was given a check for $350 at the beginning of each month for food and incidentals. Occasionally this amount was supplemented. All other expenses were charged to the defendant and paid for by him. In short, plaintiff led the kind of life which one would expect of the wife of a prosperous suburban dentist. She had no independent source of income although for several years she operated a yarn shop in Maplewood. The ven-

ture was pursued only as a hobby and indeed lost money each year until she finally gave it up.

Dr. Khalaf's children were also brought up in the same comfortable style of living. When it came time for his son James to go to college, Dr. Khalaf encouraged him to attend. He approved James' choice of George Washington University and paid all first semester expenses.

■ The sole question before us is the amount of support which defendant should pay to his wife and his son James. The rule governing the computation of support and maintenance has been repeatedly stated by our courts. It is aptly summarized in *Bonanno v. Bonanno*, 4 *N. J.* 268, 274 (1950) where this Court, quoting the earlier case of *Dietrick v. Dietrick*, 88 *N. J. Eq.* 560, 561 (E. & A. 1918) said:

"The amount is not fixed *solely* with regard, on the one hand, to the actual needs of the wife, nor, on the other, to the husband's actual means. There should be taken into account the physical condition and social position of the parties, the husband's property and income (including what he could derive from personal attention to business), and also the separate property and income of the wife. Considering all these, and any other factors bearing upon the question, the sum is to be fixed at what the wife would have the right to expect as support, if living with her husband. *Richmond v. Richmond*, 2 N. J. Eq. 90; *Boyce v. Boyce*, 27 N. J. Eq. 433."

See also *Martindell v. Martindell*, 21 *N. J.* 341, 352 (1956); *Dinnebeil v. Dinnebeil*, 109 *N. J. Eq.* 594, 602 (E. & A. 1932); *Davis v. Davis*, 103 *N. J. Super.* 284, 291 (App. Div. 1968); *Gross v. Gross*, 22 *N. J. Super.* 407, 411 (App. Div. 1952); *Nebel v. Nebel*, 99 *N. J. Super.* 256, 264 (Ch. Div. 1968), *aff'd*, 103 *N. J. Super.* 216 (App. Div. 1968).

The first factor to be considered in determining the proper amount of support is the husband's ability to pay. In the present case it is difficult for us to determine accurately what amount of money defendant earned in 1968 when this cause was litigated. The record before us is muddled and contains only partial data for the year 1968. We are unable to use his

1967 figures to help us determine his 1968 income by way of comparison since, according to defendant, his financial records for 1967 were lost sometime after the inception of this suit. Defendant testified to his 1967 income, but in view of his evasive tactics throughout the litigation of this matter, we cannot accept his unsubstantiated word.

Turning to the year 1968, the only figures before us are those covering the first ten months. (The trial ended in November of that year.) Those figures show that the defendant deposited $32,000 in his bank between January 1 and October 31. Defendant said that this amount which was supplied by an accountant was "probably correct." Projecting this figure out to a full year, defendant would have banked $38,400 as a conservative estimate.[1] In addition to what he banked, defendant conceded that he applied some of the cash and checks received from patients directly to his personal expenses. These funds were never deposited and thre was no record before the trial court of how much was retained for his personal expenses. However, defendant conceded that for the first six months he did not draw on his bank account for his "personal needs." By the time of the hearing in November, he had drawn $1,200 for personal needs. These needs including clothing, entertainment, and food by his own admission amounted to "a little under a thousand dollars a month." Adding these expenses to his bank deposits, we are convinced on the record before us that defendant's gross income was at the minimum $47,000.

The trial judge found that defendant's professional expenses projected out over the year amounted to about $16,000, and we accept that figure. Subtracting these expenses from his gross earnings leaves him with a net income before taxes of about $31,000. From this figure we must deduct

---

[1] The estimate is conservative because defendant conceded that his practice was limited during the summer months. Our projection for his yearly gross income does not take this fact into account but rather assumes that his monthly income was constant throughout the year.

about $1,500 paid in real estate taxes and insurance on the home in Maplewood and the summer home in Normandy Beach.[2] Thus, we believe that defendant had about $29,500 from which his support obligations should be calculated.

Of course, defendant's means are not the sole criterion. These must be considered in relation to his wife's and son's needs. "Needs," of course, contemplate their continued maintenance at the standard of living they had become accustomed to prior to the separation. Mrs. Khalaf has the responsibilities of any homeowner except for the payment of the taxes and insurance. She must provide food, clothing, drugs and general incidentals for both herself and her son. The trial judge concluded these needs would require an income of $150 per week. We have no quarrel with this figure. The record supports this finding. However, the trial judge allowed her only $65 per week as separate maintenance. He reasoned that the remaining $85 a week should be earned by Mrs. Khalaf since she had a "potential capacity" to earn that amount. As previously mentioned, Mrs. Khalaf had operated a yarn shop for several years, but this was not a successful financial venture and certainly could not be relied upon as a source of income. In any event, she had given the shop up prior to the trial. After the separation, she attempted to secure employment because of her financial needs. She had some training as a dental assistant before her marriage, but was unable to obtain a position in this area. Instead, she took a temporary position as a campaign worker for a state bond issue which she held for three weeks and which netted her a little over $150. At the time of this action she was not working.

Under the circumstances of this case we do not think that Mrs. Khalaf should now be required to work. She did not need to work before her husband wrongfully left her, and she is entitled to carry on as if still married in this

---

[2]This figure is calculated on the assumption that the summer home is being rented for at least part of the summer season.

regard as long as her husband's means are reasonably able to meet these needs. See, *e. g., Martindell v. Martindell, supra* 21 *N. J.* at 352. It must be remembered that we are dealing with a woman who for twenty-six years of her life had been married to the defendant and who had geared her whole life style to maintaining her household and rearing a family. We cannot now turn back the clock and ask her to get a job and develop a career. Had she chosen to work twenty-six years ago she might now be well advanced in her chosen work. But instead she married the defendant and has devoted those years to her marriage. Her husband cannot now wipe the slate clean and put aside those twenty-six years. He must support his wife in the same manner as if he had not wrongfully left his home. See *Dietrick v. Dietrick, supra*. While different considerations might govern were this marriage of short duration, we cannot say here that the plaintiff should be required to support herself in part by becoming employed. This is especially so in light of defendant's ample means and his wife's lack of any substantial employment experience. Some commentators have recommended that a wife's earning potential be considered in calculating alimony. However, significantly, these same writers recognize that there is a difference between marriages of short duration and marriages of many years such as the one here:

"The position of a woman who has given the greater part of her adult life to the care of husband and home, and has remained vocationally dormant, is far different from that of a healthy young woman without children, who in a brief period of married life has remained all but alien to her husband's interests. The law should heed their contrasting requirements." Hofstadter and Levittan, "Alimony—A Reformation," 7 *Journal of Family Law* 51, 55 (1967).

We conclude that the plaintiff is entitled to $150 a week for her support. This amount will allow her to accumulate reasonable savings to protect herself against the day when alimony payments may cease because of her husband's death or other change in circumstances. *Martindell v. Martindell, supra* at 354. Payments should be retroac-

tive to January 17, 1968, when this action was commenced with credit given for all amounts paid to date. The defendant must, of course, continue to make tax and insurance payments on the two homes[3] and pay any extraordinary medical expenses in accordance with the trial court's opinion.

The remaining question is whether the trial court provided adequate support for the son James. As mentioned above, James was a student at George Washington University when his parents separated. The college was approved by the defendant who paid the bills for the first semester including the $1,600 board and tuition. After the separation, defendant refused to pay any further college expenses and plaintiff was forced to borrow $1,600 for James' second semester tuition. The trial judge concluded that $25 a week was sufficient for the support of James. He reasoned that James should work during the summers and that he could avail himself of student loans to complete his college education. While we agree that James should work during his vacation periods, we cannot agree that he should be compelled to take out loans if he wishes to complete college. He has demonstrated scholastic aptitude necessary for college admission and, we can assume, that had it not been for his parents' separation, tuition would have been provided by the defendant without dispute as would be expected of someone of his means. The $25 a week provided by the trial judge is unrealistic and falls woefully short of what is needed for a college education today.

The concept of what is a necessary education has changed considerably in recent years. While a "common public school and high school education" may have been sufficient in an earlier time, see *Ziesel v. Ziesel*, 93 *N. J. Eq.* 153 (E. & A. 1921), the trend has been towards greater education. Our courts have recognized this trend by including the expenses of a college education as part of child sup-

---

[3]The defendant is entitled to use the summer home for half the summer season. Or if he chooses, he may rent the home for this period and apply the rent to the expenses of maintaining the home.

port where the child shows scholastic aptitude and the parents are well able to afford it. *Malkin v. Malkin*, 12 *N. J. Super.* 496 (App. Div. 1951) ; *Cohen v. Cohen*, 6 *N. J. Super.* 26, 30 (App. Div. 1949) ; *Nebel v. Nebel, supra.* See also *Jonitz v. Jonitz*, 25 *N. J. Super.* 544, 556 (App. Div. 1953) ; *Hoover v. Voigtman*, 103 *N. J. Super.* 535 (Cty. Ct. 1968) ; see generally *Annotation*, "Divorce — Support of Child — Education, 56 *A. L. R.* 2d 1207, 1220. We agree with the cases which include these expenses in child support where appropriate, and in the present case we see no difficulty in ordering the defendant to provide $3,200 a year board and tuition as support for his son James. Defendant must also repay the $1,600 plus interest which the plaintiff was forced to borrow for James' second semester board and tuition. If James does not choose to complete his college education or if he has already done so, the order may of course be modified.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for disposition in accordance with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.