209 N.J. Super. 559 (1986)
508 A.2d 273
NOEL C. DUNNE, PLAINTIFF-RESPONDENT,
v.
JAMES DUNNE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 1986.
Decided May 6, 1986.
*562 Before Judges MICHELS and DEIGHAN.
Beck, Reichstein & Guidone, attorneys for appellant (Ronald Reichstein, on the brief).
Hock, Silverlieb & Kramer, attorneys for respondent (Vincent R. Kramer, Jr., on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Defendant-husband appeals from an order entered by the Chancery Division, Family Part on August 2, 1985 fixing child support arrearages at $32,002 and directing defendant to pay the arrearages at the rate of $300 per month. In addition, child support payments were increased to $2,729 per month from $1,050 per month under an alleged oral agreement.
The parties were married on October 31, 1964. Two children were born of the marriage, Erin, on June 16, 1966 and Melissa on July 6, 1968. The parties separated in May 1976, at which time they entered into a property settlement agreement which *563 was incorporated into the judgment of divorce entered on March 23, 1978. In addition to payment of medical, dental and drug expenses for the children, the matrimonial agreement provides:
4. The husband shall pay to the wife for the support and maintenance of the two unemancipated children of the marriage, whichever is greater of the following:
(a). $8,840.00 per year allocated one-half to each child, at the rate of $700.00 payable on the first day of each and every month,
or
(b). twenty-eight percent (28%) of his gross income, allocated one-half to each child, payable at the rate of one-twelfth (1/12th) of said twenty-eight percent (28%) on the first day of each and every month.
The agreement further provides that if defendant's gross income exceeded $50,000 per year, he would be responsible for the entire cost of a college education for each child, and in that event, his support obligation for that child would be reduced one-half if the child resided at school. At the time of the motions before the trial court, Erin, who was almost 19 years old, was attending college in Boston, Massachusetts, and Melissa, who was almost 17 years old, was a junior in high school.
Since April 1982 defendant had been paying child support at the rate of $1,050 per month for both children pursuant to an alleged oral agreement. In her certification plaintiff equivocates concerning the oral agreement and states that she "reluctantly accepted the $1,050.00 monthly although my children's financial needs were greater."
As a result of defendant's subsequent relocations and several changes of employment, defendant's gross income increased substantially from approximately $30,000 in 1976 to approximately $160,000 in 1984. Based upon gross income under the agreement, defendant calculates that his obligation for child support, subject to adjustment for college expenses which defendant is required to pay, would increase from $8,400 per year to almost $45,000 per year.
The events leading up to the present appeal began when plaintiff moved to compel defendant to produce copies of his *564 income tax records for 1982, 1983 and 1984. Defendant filed a cross-motion to modify his obligation to pay child support to conform to the alleged oral agreement of the parties, to reassess the child support escalation clause and to eliminate his obligation to furnish tax returns. On May 15, 1985, an order was entered granting plaintiff's motion and denying defendant's cross-motion.
Thereafter defendant moved for a rehearing concerning the alleged oral agreement. In response, plaintiff filed a cross-motion to establish the arrearages at $42,748, to require defendant to make payments thereon, and to establish the amount of support from May 1, 1985. Defendant established that if arrearages were due pursuant to the original agreement, the amount would be $32,000, instead of $42,748.
The order of August 2, 1985 from which defendant appeals was entered without a hearing. Defendant contends that there are genuine issues of material facts which require a hearing to determine the existence of the oral agreement to pay $1,050 per month instead of the amount under the original agreement. This in turn would establish whether there are any support arrearages. He further contends that the escalation formula in the agreement which increases child support based on a percentage of gross income cannot be given automatic affect without consideration of the needs of the children and his ability to pay.

I.
Under the statute authorizing alimony and support, the "court may make such order ... as to the care, custody, education and maintenance of the children, ... as the circumstances of the parties and the nature of the case shall render fit, reasonable and just." N.J.S.A. 2A:34-23. In the landmark case of Lepis v. Lepis, 83 N.J. 139 (1980), Justice Pashman recognized that "[l]ong after the bonds of matrimony are dissolved, courts of equity are frequently called upon to reassess the persisting obligations of financial support." Id. at *565 142-143. The power of the courts to modify alimony and support orders stems, not only from inherent equitable powers, but also from the authority granted under N.J.S.A. 2A:34-23: "Orders so made may be revised and altered by the court from time to time as circumstances may require."
In view of the power of courts to reassess, revise and alter alimony and support orders, those orders define only a present obligation. The duty of support is always subject to review and modification upon a showing of "changed circumstances." Lepis, 83 N.J. at 150; Chalmers v. Chalmers, 65 N.J. 186, 192 (1974); Martindell v. Martindell, 21 N.J. 341, 352-353 (1956). The Superior Court may exercise its "highly flexible" remedial powers to enforce the terms of an interspousal support agreement "to the extent that they are just and equitable," Lepis, 83 N.J. at 146; Schlemm v. Schlemm, 31 N.J. 557, 581-582 (1960), and such an agreement is enforceable only if it is "fair and just." Petersen v. Petersen, 85 N.J. 638, 642 (1981); Di Giacomo v. Di Giacomo, 80 N.J. 155, 159 (1979); Edgerton v. Edgerton 203 N.J. Super. 160, 171 (App.Div. 1985). "[A] decrease [in support] is called for when circumstances render all or a portion of support received unnecessary for maintaining [the standard of living reflected in the original decree or agreement]." Lepis, 83 N.J. at 153.
It is therefore readily apparent that separation agreements are not immutable; changed circumstances which result in an increase or decrease in support or alimony are not limited in scope to events that were unforeseeable at the time of the divorce. Lepis, 83 N.J. at 152. Even events which are foreseeable at the time of the divorce may later justify a modification of the court order. Ibid. As one commentator observed:
Rejection of the "foreseeability" defense is an obvious by-product of the public policy determination made by the supreme court that in most cases, the courts should reserve the power to modify not only prior decrees, but also agreements that no longer remain fair and equitable.[156]
Footnote 156 then continues:
What the supreme court seems to be saying is that given the trauma of divorce, sometimes even these circumstances that should have been foreseen by *566 litigants are overlooked because of the emotions of the moment. In this regard, Lepis attempts to protect litigants from themselves. [Hymerling, "Commentary on Lepis v. Lepis: A practitioner's guide to recent changes in the law of alimony and child support in New Jersey," 12 Rutgers L.J. 1, 26 (1980)].
Although escalation clauses are not invalid per se, it does not follow that they are to be automatically enforced according to their specific terms. Petersen, 85 N.J. at 644. Enforcement of such agreements remains a judicial responsibility and is subject to judicial supervision. Lepis, 83 N.J. at 148-149; accord Petersen, 85 N.J. at 644; Mastropole v. Mastropole, 181 N.J. Super. 130, 141 (App.Div. 1981). Thus, the supporting spouse who is subject to a matrimonial agreement with an escalation clause may still seek to have the escalator modified because of changed circumstances, Petersen, 85 N.J. at 644, even if the subsequent events concerning child support were foreseeable, and a fortiori, if the events were unforeseeable.

II
A parent should be compelled to pay such amount for child support as the circumstances of the parties and the nature of the case renders fit, reasonable and just. Many factors must be taken into consideration to determine the proper and reasonable amount for child support. The touchstone to determine that amount is always the welfare of the child. Gordon v. Gordon, 147 N.J. Super. 585, 590 (App.Div. 1977).
When support is at issue, the general considerations are the children's needs and the supporting spouse's ability to contribute to the fulfillment of those needs. See Lepis, 83 N.J. at 152. The supporting spouse's obligation is mainly determined by the quality of economic life during the marriage, not bare survival. Id. at 150.
In Khalaf v. Khalaf, 58 N.J. 63, 67 (1971), the Supreme Court reiterated the rule governing the computation of support and maintenance stated in the seminal case of Dietrick v. Dietrick, 88 N.J. Eq. 560, 561 (E. & A. 1918): "The amount is not fixed *567 solely with regard, on the one hand, to the actual needs of the wife, nor, on the other, to the husband's actual means." (emphasis in original). Khalak emphasized that "defendant's means are not the sole criterion" for support and alimony but need "must be considered in relation to [the supported spouse's and child's] needs." 58 N.J. at 69. The Court continued:
"Needs," of course, contemplate their continual maintenance at the standard of living they had become accustomed to prior to the separation. [Ibid.].
This is not to say that children are entitled only to the bare necessities; a supporting parent has an obligation to share with his children the benefit of his financial achievement. Melzer v. Witsberger, 505 Pa. 462, 480 A.2d 991, 995 (1984). Where a supporting parent's income permits, it is proper for the court to recognize that certain expenditures for recreation, entertainment, and other nonessential items are reasonable and in the best interest of the child. Ibid. As stated in Spingola v. Spingola, 91 N.M. 737, 580 P.2d 958, 964 (1978):
Where the income, surrounding financial circumstances and station in life of the father demonstrates an ability on his part to furnish additional advantages to his children above their actual needs, the trial court should provide such advantages within reason.
Accord Melzer, 505 Pa. at 471, 480 A.2d at 995. Nevertheless, a parent should not be obligated to pay for extras  those items which are beyond what is reasonably necessary for the child's welfare  in which that parent does not concur. Melzer, Id. at 471, 480 A.2d at 995.
"In order to define the support obligation of each parent, a court must first determine the needs of the children: a court has no way of arriving at a reasonable order of support unless it knows how much money is actually required to care for the children involved." Ibid. In order to determine the reasonable expense of raising the children involved, the court is required to hold a hearing to determine the necessary support based on the particular circumstances  the needs, the custom, and financial status  of the parties. As to "needs," Bethea v. Bethea, 43 N.C. App. 372, 258 S.E.2d 796, 799 (1979), quoted in Melzer, states:

*568 What constitutes necessities depends upon the facts and circumstances of the particular case. They include food, clothing, lodging, medical care and proper education. They are not limited to those things which are absolutely necessary to sustain life, but extend to articles that are reasonably necessary for the proper and suitable maintenance of the child in view of his social station in life, the customs of the social circle in which he lives or is likely to live and the fortune possessed by him and his parents.
Just as a voluntary reduction in income does not automatically reduce the amount of a supporting parent's obligation to support his child, Lynn v. Lynn, 165 N.J. Super. 328, 340-342 (App.Div. 1979), a court should not focus "upon the substantial income of" a supporting parent without "showing [the amount] the children required." In re Marriage of Berry, 660 P.2d 512, 513 (Colo.Ct.App. 1983) ($1,000 per month each for two children where father's annual gross income was over $100,000 held excessive without showing that the children required that much monthly support). Ordinarily, a support order should not try to anticipate changes in the needs of a child by making an award of child support to increase automatically with the child's age. McManus v. McManus, 38 Ill. App.3d 645, 647, 348 N.E.2d 507, 509 (App.Ct. 1976) (a self adjusting escalating award for child support held invalid).
With respect to child support orders, a court should not ordinarily lay down rules for the future which will depend upon circumstances materially different from those shown by the evidence and which cannot reasonably be predicted from the evidence. 24 Am.Jur.2d, Divorce and Separation, § 1039 at 1030; cf. Lepis, 83 N.J. at 152. In particular, a court should not provide a sliding scale where child support payments increase and decrease automatically in proportion to the earnings, since such an order is based upon the assumption that a change in only one factor, the father's income, will measure the obligation to pay, whereas there are many factors which properly determine the amount of a future payment, such as the increased needs of the child as it grows older. 24 Am.Jur.2d, § 1039; Khalaf, 58 N.J. at 69. See Annotation, "Validity and *569 enforceability of escalation clause in divorce decree relating to alimony and child support," 19 A.L.R.4th 830 (1983).
Escalator clauses relating to child support have been held both valid or enforceable, id. at 833, and invalid and unenforceable. Id. at 835. The rationale of those cases upholding and enforcing an escalation clause is generally predicated on such clauses being geared to a change in the net income of the obligated spouse, which is one of the factors which ordinarily justifies modification, and on the assumption that the amount to be paid is a readily ascertainable figure and is not indefinite or uncertain. Id. at 833. On the other hand, cases involving awards of child support with escalator clauses have been held invalid and unenforceable basically because the clauses focus unduly on the income of the supporting spouse without adequately considering the child's needs together with other factors. Ibid. In short, the supporting parent is "legally obligated to provide only for the reasonable expenses of raising [the] children." Melzer, 505 Pa. at 471, 480 A.2d at 995; (emphasis in original) citing Tubb v. Middlebrooks, 379 So.2d 1272, 1274 (Ala. Civ. App. 1979) (the amount of support a parent may be required to pay is the reasonable needs of the children and the reasonable ability of the supporting parent to pay).

III.
In the present case, as a result of the gross income escalation clause defendant currently is required to pay support for his 17 year old daughter at the rate of $1,820 per month or $421 per week or $21,840 per year. He is required to pay $909 per month or approximately $212 per week or $10,908 per year for his other daughter, plus her college expenses of $12,000 per year. Thus, under the formula in the escalation clause of the settlement agreement defendant is required to pay a total of $44,748 for support and education of his two daughters.
It is difficult to envision that a 17 year old teenager needs $21,840 per year for support or that a 19 year old teenager *570 needs $10,908 per year for support plus college expenses of $12,000 per year. Indeed, the unrealistic formula would require more support for a junior in high school than a college student. Common sense dictates that a college student requires more for support than a student in high school. The automatic application of the escalation clause at the rate of 28% of the gross income of defendant as presently applied to the facts and circumstances in this matter is entirely unreasonable and irrational.
The good faith intention of the parties at the time of execution of the matrimonial agreement may not be construed as a vested right or an annuity for support under an escalation formula in the agreement which cannot be modified as circumstances change. The basic requirement of need is the underlying criterion to determine the amount of support. For instance, to carry the present agreement to a logical extreme, if defendant earned $1,000,000 gross earnings per year, under the inflexible escalation clause defendant would automatically be required to pay 28% of the gross earnings or $220,000[1] per year for the support of his children. Even though such a result may have been foreseeable, and even more so if it was unforeseeable, such application of the formula in the matrimonial agreement cannot be enforced.
The conclusory statement by plaintiff that: "I am in need of the agreed upon support to properly provide for the children," is entirely insufficient to automatically require an escalation in monthly payments for support. Most assuredly the ability of the children to subsist on $1,050 per month plus medical, dental and drug expenses since May 1982, negates any need for an increase of support to $2,729 per month. We are satisfied that the escalation clause is "not enforceable according to its terms in the absence of an inquiry and determination by the trial *571 court as to whether under changed circumstances the enforcement of those terms would be fair, just and equitable." Petersen, 85 N.J. at 646. While "a clause dealing with the obligor's earnings is material and relevant in the balancing that goes into the resolution of the support issue," id. at 643, "other factors [underlying the needs of the supported children] must also be considered by a court." Ibid. As noted in Petersen, the guidelines for modification of an escalator clause are found in Lepis, 83 N.J. at 150-156; Carlsen v. Carlsen, 72 N.J. 363, 369-371 (1977) and Smith v. Smith, 72 N.J. 350, 360-363 (1977). 85 N.J. at 644.

IV.
Since the issues as to the need for automatic increases for support and the amount of arrearages hinge on factual determinations, credibility and diverse contentions, a plenary hearing is required. Tancredi v. Tancredi, 101 N.J. Super. 259, 262 (App. Div. 1968); accord Mastropole, 181 N.J. Super. at 140-141. See also Hallberg v. Hallberg, 113 N.J. Super. 205, 208, (App.Div. 1971).
The enforcement, collection, modification and extinguishment of unpaid arrearages in support are within the discretion of the court and each case demands careful examination and weighing of all essential facts. Mastropole, 181 N.J. Super. at 141; Tancredi, 101 N.J. Super. at 261.
Moreover, defendant maintains that in April 1982 the parties agreed to reduce child support to the rate of $1,050 per month. Indeed, the payment and acceptance of that amount by plaintiff may indicate the existence of such an agreement. In effect, plaintiff asserts that acceptance of the reduced child support was under duress. A hearing may very well establish her contention or establish the existence of the modification of the agreement to pay only $1,050 per month. At the same time it may be determined that indeed $1,050 per month was ample support for the children or that there has been a waiver or *572 estoppel to assert greater need. As stated in Duffy v. Duffy, 19 N.J. Misc. 332, 340, 19 A.2d 236, 241 (Ch. 1941):
That the court may infer from some circumstances surrounding a given case that the parties have made some arrangement between themselves with respect to support, or that complainant has acquiesced in defendant's default or has waived her strict rights under an alimony or maintenance decree, where she has failed for a long period of time to resort to the court, has long been settled law. The ecclesiastical courts would not ordinarily force arrearages of alimony beyond one year, a rule which has met with approval in our own decisions.
See also Risko v. Risko, 136 N.J. Eq. 93 (E. & A. 1944) (a four year period was too long to apply for arrearages and thus the court found an estoppel). Equitable considerations may determine whether, and to what extent, the supporting husband should be forced to pay arrearages. Madden v. Madden, 136 N.J. Eq. 132, 136-137 (E. & A. 1945).
Lastly, the determination of arrearages does not involve a mere mathematical calculation. As stated in Mastropole, 181 N.J. Super. at 141:
We must not lose sight of the fact that the enforcement, collection, modification and extinguishment of unpaid arrearages in alimony and child support payments are matters addressed to the sound discretion of the court. Each case demands careful examination and weighing of all of the essential facts. Tancredi v. Tancredi, supra 101 N.J. Super. at 261; Liss v. Liss, 19 N.J. Super. 358, 361 (App.Div. 1952); Federbush v. Federbush, 5 N.J. Super. 107, 110 (App.Div. 1949). Moreover on an application to determine the amount of arrearages and to compel their payment, the court has discretion to determine whether the prior support order or judgment should be enforced and whether and to what extent a spouse should be forced to pay arrearages. Madden v. Madden, 136 N.J. Eq. 132, 136 (E. & A. 1945); Winter v. Winter, 162 N.J. Super. 456, 461 (App.Div. 1978); Welser v. Welser, 54 N.J. Super. 555 (App.Div. 1959). Support obligations, as with alimony obligations, do not automatically "vest as they become in arrears but are subject to the control of the court." Federbush v. Federbush, supra 5 N.J. Super. at 110.
As pointed out by defendant, with the requirement to repay the arrearages of $32,002 at the rate of $300 per month, the children will be 26 and 28 years of age when the arrearages are fully repaid. It is neither fair nor equitable to require defendant to make payments of child support for the children who by then will have been long since emancipated. Where "it appears that the wife has maintained herself for a considerable *573 period of time without receiving the judicially prescribed support, equitable considerations dictate whether, and to what extent, the defending husband should be forced to pay arrearages." Tancredi, 101 N.J. Super. at 261, citing Madden v. Madden, supra.
The order of August 2, 1985 fixing arrearages at $32,002 and directing defendant to pay arrearages at the rate of $300 per month as well as increasing child support payments to $2,729 per month is vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] $140,000 support for Melissa, one-half of that amount or $70,000 for Erin, plus $12,000 college tuition and expenses.