**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3277-24

SORA LEAH OCHS,

    Plaintiff-Appellant,

v.

ARI OCHS,

    Defendant-Respondent.

_____

Submitted April 23, 2026 – Decided May 29, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0735-06.

Sora Leah Ochs, self-represented appellant.

Treuhaft & Zakarin LLP, attorneys for respondent (Ira Treuhaft, of counsel and on the brief).

PER CURIAM

    Plaintiff Sora Leah Ochs appeals from the Family Part's May 2, 2025 order granting in part and denying in part her cross-motion to enforce provisions of

the parties' marital settlement agreement (MSA). Because disputed issues of fact exist essential to full and fair consideration of the legal questions posed regarding defendant Ari Ochs's laches defense, we reverse and remand for a plenary hearing.

I.

The parties were married in July 1995 and had two daughters born in 1999 and 2001. The marriage ended by judgment of divorce in December 2005, which incorporated the parties' September 2005 MSA. Pursuant to Articles IV and VI of the MSA, the parties agreed defendant would pay $792[1] per month in child support and an additional $792 per month in non-deductible spousal support[2] directly to the bank to pay off the mortgage on the marital residence, with the intent the combined payments would equal the total mortgage payment due each month. Additionally, pursuant to Article IV(B)(1)(a), the parties agreed defendant would pay for the children's school tuition and related expenses through high school.

---

[1] The $792 monthly child support payment was subject to a dollar-for-dollar adjustment for any increase in real estate taxes or homeowner's insurance costs.

[2] The MSA provided the spousal support payments would terminate upon plaintiff's remarriage. Plaintiff remarried in August 2007.

The parties agreed plaintiff would have exclusive possession of the marital residence for her and the children until the occurrence of an "[o]perating [e]vent." The MSA defined such an event as "the earliest of: (a) both [c]hildren . . . no longer living in the [m]arital [r]esidence (excluding the circumstances of the [c]hildren dorming at a residential college); (b) [the d]ecision of [plaintiff] to live elsewhere; (c) [m]utual agreement; or (d) July 1, 2025."

Article V(D) provided plaintiff "the right to elect to purchase [defendant]'s share of the [m]arital [r]esidence" at any time prior to an operating event, and gave defendant the right to exercise his buy-out option if plaintiff did not choose to exercise hers. Article V(E) stated: "If neither party chooses to exercise their buy-out option, the parties shall place the [m]arital [r]esidence on the market for sale. Both parties shall cooperate and use efforts reasonably calculated to produce the best sales price available on the market."

Additionally, pursuant to Article VIII(C), the parties agreed the stock options defendant had earned from a previous employer were marital assets. All proceeds from those options would "first be used to pay off the parties' credit card debt" and any "remaining proceeds . . . earned prior to July 2003" would "be shared equally between" them.

A-3277-24

As outlined in Article XIII, the parties also agreed, in the event either defaulted in their performance of any obligations under the MSA, the aggrieved party would send written notice to the defaulting party and allow them ten days to cure the default before instituting legal action for relief. Article XIX(3) provided no provision of the MSA "shall be changed or modified, nor . . . discharged or terminated[,] . . . except by an instrument in writing signed by the party against whom the change, modification, discharge[,] or termination is claimed."

In November 2023, following the younger daughter's marriage, defendant advised plaintiff he wanted to place the marital residence on the market for sale, as an operating event had occurred pursuant to the MSA, given neither child was still living in the marital residence. In January 2024, after not receiving a response from plaintiff, defendant sent her a second letter, again requesting a response regarding the sale of the home and notifying plaintiff she was in default. Plaintiff responded in mid-January, informing defendant she needed six months to obtain a mortgage to buy defendant out of the home. Thereafter, the parties continued exchanging emails regarding the property's sale but were ultimately unable to reach an agreement. In February 2024, plaintiff unilaterally paid off the outstanding mortgage balance, which totaled $75,892.69.

A-3277-24

In February 2024, defendant moved to enforce the MSA, seeking, in part, to require plaintiff to list the marital residence for sale within five days of the court's order and for fifty percent of the net proceeds of the sale. Plaintiff cross-moved, in part, requesting the court: deny defendant's motion in its entirety and permit plaintiff to buy out defendant's interest in the marital home; reduce defendant's share of the marital home by $77,500, to reflect half of her paydown of the mortgage; find defendant violated Article IV(E)(1) of the MSA by failing to pay child support in the amount of $45,751.32 and to be credited that amount against his share of the home; find defendant violated Article IV(B)(1)(a) of the MSA by failing to pay his share of the children's tuition and for the $79,689 owed to be credited against his share of the marital home; and find defendant in violation Article VIII of the MSA for failing to provide her with the value of her share of his stock options and for the $37,029 owed to be credited against his share of the home.[3]

Defendant's opposition to the cross-motion argued plaintiff's requests for credits were untimely, unsupported, and barred by laches. He also certified he had made all required payments under the MSA.

---

[3] Plaintiff's subsequent supplemental certification amended the amounts she sought to $43,927.62 in unpaid child support, $77,605 in unpaid child educational costs, and $34,780 for her share of the stock options.

A-3277-24

The trial court issued a case management order appointing an appraiser to appraise the marital residence and requiring the parties to exchange financial information and an accounting of the credits plaintiff sought in her cross-motion. Plaintiff submitted a supplemental certification pursuant to the court's order, in which she provided financial documentation and an accounting of the credits against defendant's share of the marital home sale proceeds sought in her cross-motion.

On May 2, 2025, following oral argument, the trial court rendered an oral ruling. It found an "operating event" under the MSA occurred when the younger daughter married and moved out of the parties' marital home in November 2023, triggering the contractual requirement the home be sold. The court determined plaintiff violated the MSA because there was "nothing in her certification or . . . any evidence" showing she elected to buy out defendant's share of the home prior to the operating event. Accordingly, it ordered the marital residence to be listed for sale within five days of that date. The court denied plaintiff's requests to deny defendant's motion and to buy out defendant's interest in the marital home.[4]

---

[4] Plaintiff's reply brief notes this part of the trial court's order was not preserved for appeal and is "moot[,] as the house is under contract to be sold."

A-3277-24

As to the division of the sale proceeds, the court found the mortgage balance at the time the parties entered the MSA was "about [$]155,000" and noted their agreement defendant would make direct payments toward the mortgage, in lieu of child support and alimony payments to plaintiff. It agreed plaintiff was entitled to the credit for half the paydown of the mortgage, reasoning it would be unfair for defendant "to receive a credit for the paydown of the mortgage, in essence, refunding . . . [d]efendant all of the money that was paid towards child support and alimony."

Next, the court concluded laches barred plaintiff's requests for child support and education expenses. Although it acknowledged the laches issue requires a hearing, the court stated: "This is the hearing. And oral argument on the issue is satisfied under the case law." The court further reasoned plaintiff never notified defendant or asserted a claim he was in default regarding child support or tuition payments over the approximate twenty years since the MSA's execution, and it would prejudice defendant's ability to defend against those claims to allow plaintiff to now advance them.

Similarly, the court found the doctrine of laches barred plaintiff's request for the stock option credits because, pursuant to the MSA, the options were to be exercised within 180 days of the agreement's execution in 2005, but plaintiff,

7

since that time, never asserted a claim to the proceeds. It explained the documentation provided, without an expert evaluation of the stock options' worth, did not allow the court to properly assess how much, if anything, plaintiff was owed. The court concluded defendant was prejudiced because no documentation was available proving whether or not he fulfilled the requirements, given the amount of time that had passed since the MSA's execution.

## II.

Plaintiff argues the trial court erred in applying the doctrine of laches without first conducting a plenary hearing. She asserts the parties' certifications referenced numerous disputed facts regarding her claims defendant breached the MSA, specifically defendant's statements: disavowing knowledge of any of plaintiff's claims unrelated to the sale of the marital home; asserting plaintiff never sought a share of the options and her valuations were incorrect; and plaintiff's claims were "essentially manufactured." Plaintiff emphasizes none of those disputed facts were the subject of direct or cross-examination and contends the court was not in a position to make credibility findings. She emphasizes the court acknowledged a hearing was required to apply laches but erred in concluding oral argument sufficed.

8

Plaintiff further argues the court abused its discretion by failing to conduct a plenary hearing pertaining to defendant's sale of the stock options, particularly because the identification and valuation of the options were disputed. She claims the court improperly bypassed the issue by "folding it into an overbroad laches ruling," leaving the issue unresolved, rather than taking testimony so she could establish the stock options' value and compelling the production of applicable records.

Plaintiff also claims the court "did not identify any prejudice suffered by [d]efendant," emphasizing the mere passage of time is insufficient to show prejudice. She asserts the court failed to find defendant suffered any material harm due to her alleged delay in asserting her claims, including detrimental reliance, loss of evidence, change in position, unavailability of witnesses, or an inability to defend against her claims. Plaintiff further notes there was no evidentiary hearing and thus no way to prove whether any evidence was unavailable. Accordingly, she contends the court misapplied the case law it cited to bar her claims under the doctrine of laches. Plaintiff also contends defendant benefited from her delay by not complying with the MSA and concealing the sale of the options.

Plaintiff further argues the court erred in its laches analysis because a proper application of the facts to the doctrine would have led to a contrary result. She maintains the court's focus on the MSA's age was misplaced, because many of defendant's obligations only arose recently as their children grew older, including child support adjustments and education-related costs like tuition, and thus, she contends the timing of her claims was reasonable. Plaintiff also asserts the timing of her claims was consistent with the parties' understanding there would be an accounting at the time of the marital home buyout or disposition and defendant had continued making mortgage payments in accordance with that understanding.

Plaintiff also argues the court's application of laches to her child support and alimony claims contravened state law and public policy. Relying on N.J.S.A. 2A:17-56.23(a), she asserts the court erred in retroactively nullifying defendant's accrued child support obligations, which had already attached by operation of law. She contends the court's blanket dismissal of her claims to child support and education expenses was improper, emphasizing a child's right to support is not subject to waiver or equitable forfeiture, and each child support obligation is a separate, vested judgment, enforceable upon accrual.

An appellate court defers to the family court's findings of fact "when supported by adequate, substantial, credible evidence" in the record. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We afford deference in light "of the family courts' special jurisdiction and expertise in family matters." Id. at 413. However, its "legal conclusions, and the application of those conclusions to the facts," are reviewed de novo. Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013).

As is the case with any contract, we review a settlement agreement de novo because the interpretation of a contract is a legal question. Quinn v. Quinn, 225 N.J. 34, 45 (2016) ("An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute."). "Accordingly, we pay no special deference to the [family] court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). A court's decision to grant or deny enforcement of a matrimonial agreement, including the entry of relief to secure compliance with equitable distribution orders, is reviewed for abuse of discretion. See Quinn, 225 N.J. at 42-43.

The application of laches "depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004) (quoting Garrett v. Gen. Motors Corp.,

11

844 F.2d 559, 562 (8th Cir. 1988)). We review the application of the laches doctrine under the abuse of discretion standard. See United States v. Scurry, 193 N.J. 492, 504 (2008). So too is the denial of a plenary hearing, which will be upheld unless the court abused its discretion by refusing to consider genuinely disputed issues of material facts. See Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995).

The equitable doctrine of laches is applicable in divorce proceedings. Schlemm v. Schlemm, 31 N.J. 557, 572 (1960) (quoting Judkins v. Judkins, 22 N.J. Super. 516, 537 (Ch. Div. 1952)). The policy underlying the doctrine is to discourage stale claims. Gladden v. Bd. of Trs., Pub. Emps.' Ret. Sys., 171 N.J. Super. 363, 371 (App. Div. 1979). The doctrine is properly "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." Knorr v. Smeal, 178 N.J. 169, 180-81 (2003). "The key factors . . . are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Id. at 181 (quoting Lavin v. Bd. of Educ., 90 N.J. 145, 152 (1982)). Generally, where a party asserts laches as an issue in the proceeding, a "full factual hearing on both sides is usually required."

12

Dorchester Manor v. Borough of New Milford, 287 N.J. Super. 163, 173 (Law Div. 1994), aff'd, 287 N.J. Super. 114 (App. Div. 1996).

A plenary hearing is necessary "'when the submissions show there is a genuine and substantial factual dispute[,]' which the trial court must resolve." Llewelyn v. Shewchuk, 440 N.J. Super. 207, 217 (App. Div. 2015) (alteration in original) (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)). Where the need for a plenary hearing is not as obvious, the movant must make a prima facie showing the plenary hearing is necessary. Hand, 391 N.J. Super. at 106.

Pursuant to these principles, we conclude the trial court misapplied its discretion by not conducting a plenary hearing regarding the laches issue. We are mindful plaintiff did not request a plenary hearing. At oral argument, her counsel stated: "[W]e're not asking for a hearing because we believe on the . . . face of it, the laches claim should fail and . . . [does] not rise to the level that a hearing should be required." Counsel nevertheless directed the court to case law standing for the proposition a hearing is ordinarily required when a court addresses a laches defense. Notably, the court did not find plaintiff waived a hearing. Rather, it acknowledged, "[t]he doctrine of laches . . . requires a

hearing" but found the oral argument conducted that day satisfied the need for one.

The court ultimately concluded plaintiff's delay in bringing her application equated to having slept on her rights, and the delay prejudiced defendant. However, it drew this conclusion based on the motion papers alone. The parties' certifications created a factual dispute regarding when plaintiff learned of the circumstances that prompted her cross-motion, and the court did not consider plaintiff's claim she delayed seeking enforcement in good faith during periods when defendant was unemployed or experiencing financial difficulties. The record suggests, as recently as 2022, defendant forwarded a check to plaintiff for over $6,000 for payments he missed in 2007 due to his unemployment. Moreover, plaintiff notes the MSA encouraged the parties to "work out . . . modifications themselves," when possible, and asserts the "trusting generosity" she displayed was "designed to foster an effective co-parenting relationship."

Plaintiff contends the parties "verbally agreed to defer enforcement" under the MSA to allow defendant to "re-establish" himself "with the explicit . . . understanding . . . any underpayments [by defendant] [w]ould be made up" when the house was sold. She also asserts many of her claims were for relatively

14

recent education-related expenses incurred by the parties' children—not twenty-year-old claims.  She notes the MSA contains a "no waiver clause" that states: "The failure of either party to insist . . . upon a strict performance of any provision[]" of the MSA "shall not be construed as a waiver or a relinquishment for the future of such provision, but the same shall . . . remain in full force and effect."  The court did not address these contentions.

There are additional significant factual disputes.  For example, plaintiff claims defendant owes $43,927.62 in unpaid child support and $77,605 for his share of the children's educational expenses.  Defendant, on the other hand, maintains he "paid more than his fair share of child support" and educational expenses over the years, consistent with the MSA.

The general rule is "the right to child support belongs to the child and may not be waived" or bargained away by a parent.  L.V. v. R.S., 347 N.J. Super. 33, 41 (App. Div. 2002).  "For this reason the application of laches to matters of parent-child relationships have been carefully circumscribed."  Ibid.  Laches requires close consideration of a developed factual record.  See id. at 39.

Here, the lack of a plenary hearing constrained the court's ability to consider the laches factors.  It had no opportunity, other than at oral argument, to draw any conclusions, and its decision should have been based on more than

just the parties' conflicting affidavits and certifications. Testimony was necessary to analyze defendant's laches defense.

Resolution of the factual disputes cannot be made at an oral argument. Rather, the issues "hinge on factual determinations, credibility and diverse contentions, [and therefore,] a plenary hearing is required." Dunne v. Dunne, 209 N.J. Super. 559, 571 (App. Div. 1986). Accordingly, we remand for the court to conduct a hearing on the applicability of defendant's laches defense to plaintiff's child support, educational expenses, and stock option claims. Nothing in this opinion should be construed as expressing an opinion on the merits of any of these claims.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

16